1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

WILLIE A. THOMAS, III,                        )   1:11cv0214 DLB
                                              )
                                              )
                    Plaintiff,                )   ORDER GRANTING DEFENDANTS'
                                              )   MOTION FOR SUMMARY JUDGMENT
         v.                                   )   (Document 19)
                                              )
BNSF RAILWAY COMPANY, a Delaware )
Corporation; BEN SHEETS, an individual;  )
and DOES 1-20 inclusive,                      )
                                              )
                    Defendants.               )
                                              )
                                              )
_____ )

On May 15, 2012, Defendants BNSF Railway Company and Ben Sheets filed the instant

motion for summary judgment.  The matter was heard on June 15, 2012, before the Honorable

Dennis L. Beck, United States Magistrate Judge.  Thomas Cregger appeared on behalf of

Defendants BNSF Railway Company and Ben Sheets.  John Furstenthal appeared on behalf of

Plaintiff Willie A. Thomas, III.

## **BACKGROUND**

Plaintiff Willie A. Thomas, III ("Plaintiff") filed this employment discrimination action

against Defendants BNSF Railway Company ("BNSF") and Ben Sheets ("Sheets") (collectively

"Defendants") on December 15, 2010, in Fresno County Superior Court.  Plaintiff asserted four

causes of action: (1) harassment based on race and religion in violation of Cal. Gov't Code §

12940 against BNSF and Sheets: (2) failure to prevent harassment in violation of Cal. Gov't

Code § 12940(k) against BNSF; (3) intentional infliction of emotional distress against BNSF and

1

1   Sheets; and (4) breach of the implied covenant of good faith and fair dealing against BNSF.

2       Defendants answered the complaint on February 4, 2011, and removed the action to this

3   Court on February 7, 2011.  Thereafter, on May 14, 2012, Defendants filed the instant motion for

4   summary judgment.  Plaintiff opposed the motion on June 1, 2012, and Defendants replied on

5   June 8, 2012.

6                                    **UNDISPUTED MATERIAL FACTS**

7       A.      Plaintiff's employment with BNSF

8       Plaintiff is an African-American who has worked for BNSF since 1992.  Defendants'

9   Separate Statement of Undisputed Facts ("Defs. UMF") 1.  He initially was hired as a

10  maintenance of way worker.  Defs. UMF 2.  In 1994, he was promoted to the position of

11  Switchman/Conductor.  Defs. UMF 3.  In 1998, he was promoted to Locomotive Engineer and

12  has remained in that position to date.  Defs. UMF 4.  Throughout his employment, Plaintiff was

13  subject to ongoing testing while in the workplace.  Defs. UMF 5.

14      B.      Defendant Sheets' employment with BNSF

15      Defendant Sheets, at the time of the incident in question, July 5, 2009, was employed as a

16  Senior Trainmaster.  Defs. UMF 6.  One of Sheets' tasks was to observe employees, such as

17  Plaintiff, to insure they were complying with BNSF work rules.  Defs. UMF 7.  On July 5, 2009,

18  Sheets was testing Thomas and other members of his crew regarding compliance with BNSF

19  work rules.  Defs. UMF 8.

20      C.      Encounter between Plaintiff and Defendant Sheets

21      On July 5, 2009, Plaintiff and his crew were assigned to perform switching movement at

22  Kings Park, near Hanford, California.  Defs. UMF 9.  While on route to Kings Park, Plaintiff

23  received a radio instruction to "halt all movements."  Defs. UMF 10.  After the train stopped,

24  Sheets boarded the locomotive.  Defs. UMF 11.  Sheets informed Plaintiff that he had been

25  testing the crew through observing their operating of the train.  Defs. UMF 12.  Sheets also

26  informed Plaintiff that he had observed the locomotive move over a crossing without its "ditch

27  lights."  Defs. UMF 13.  Sheets told Plaintiff that he needed to examine the locomotive data

28  recorder to determine the train's speed at the crossing.  Defs. UMF 14.

1    While in the locomotive, Sheets noticed that Plaintiff had a cell phone in the locomotive

2    cab. Defs. UMF 16. Plaintiff claims that the phone was powered off, but that he had been using

3    the calculator functions earlier. Defs. UMF 17. While in the cab, Sheets observed the phone

4    vibrating.[1] Defs. UMF 18. Sheets ordered Plaintiff to show him the phone. Defs. UMF 19. An

5    argument ensued between Sheets and Plaintiff, with Plaintiff claiming the phone was off, and

6    Sheets claiming he had heard it vibrate. Defs. UMF 20. As the argument escalated, Plaintiff

7    claims that Sheets called him a "liar," and then made statements to the effect of "you are not a

8    true Christian, Christians don't lie," and "I've seen you witnessing . . . to fellow railroaders about

9    the Bible. So if you were a Christian, you shouldn't lie." Defs. UMF 21. These are the only

10   statements Sheets made regarding religion. Defs. UMF 22. Plaintiff was scared when Sheets

11   yelled at him. Pltf. UMF 4. Plaintiff was suspended for 20 days without pay because of the

12   alleged cell phone use and for allegedly not having the ditch lights on. Plaintiff's Statement of

13   Facts ("Pltf. UMF") 2.

14   Prior to July 5, 2009, Plaintiff had not met Sheets, nor experienced any discrimination or

15   harassment on account of his race or religion. Defs. UMF 25. Plaintiff admits that Sheets tested

16   all employees regardless of race or nationality. Defs. UMF 26.

17   D.      Plaintiff's complaint to Human Resources

18   On July 14, 2009, Plaintiff submitted a formal complaint to the BNSF HR Department.

19   Defs. UMF 27. In the complaint, he described the incident of July 5, 2009. He claimed to have

20

21          [1]In his affidavit, Plaintiff declares that his cell phone did not vibrate or make any noise and his cell phone

22   records corroborate this fact. Affidavit of Plaintiff ¶ 7 and Exhibit A. Defendants object because there is an
     insufficient foundation for the cell phone records. Defendants' objection is OVERRULED. However, the cell phone

23   records are irrelevant and are not determinative as they identify only incoming and outgoing calls, not texts or any
     other of the myriad items that might cause a cell phone to vibrate.

24          To the extent Plaintiff is attempting to dispute issues related to the underlying discipline, he may not do so.

25   First, Plaintiff does not allege in his complaint that Defendant Sheets or anyone else made false allegations or that
     the discipline imposed resulted from any misconduct on the part of Sheets or others. Second, and more importantly,

26   Plaintiff is barred from disputing the facts of the underlying discipline because, after a formal investigation, BNSF
     determined that the charged violations regarding the cell phone and the ditch lights occurred and imposed discipline.

27   Plaintiff was allowed to appeal the discipline, but he did not. Declaration of Joe Heenan ¶¶ 3-7. As Plaintiff cannot
     "relitigate" the disciplinary issue, the Court treats the facts relating to the rules violations as undisputed.

28

been subjected to religious harassment by Sheets and, because Sheets had mistaken him for another African-American employee, he claimed the statements were racially motivated.  Defs. UMF 28.  BNSF Human Resources began an investigation as the result of Plaintiff's complaint. Defs. UMF 29.  At the initiation of the investigation, BNSF issued a warning regarding its policy which prohibits any retaliatory act against a complaining employee.  Defs. UMF 30.  As a result of the investigation, Sheets was formally reprimanded and was required to undergo anger management training.  Defs. UMF 31.  The reprimand letter included language that any further incident or failure to comply could result in discipline, to include termination.  Defs. UMF 32. Sheets was not suspended, docked pay or demoted.  Pltf. UMF 3.

Plaintiff claims that Sheets continued to harass him.  Defs. UMF 33.  The "harassment" consisted of "glaring looks of anger and discontent."  Defs. UMF 34.  Plaintiff believes the harassment "intensified" because Sheets never apologized to him personally.  Sheets did, however, send a written apology.  Defs. UMF 35.

BNSF put Sheets on a "Performance Improvement Plan" ("PIP") for complaints about his "management style" before the incident with Plaintiff.  Pltf. UMF 17.  In a review, Sheets indicated that "one of the areas that I have struggled with is keeping my personal feeling in check."  Pltf. UMF 18.  Sheets also indicated in a review that "I have attended voluntary counseling to work on the personality conflict and have identified the areas of my personality that cause me to struggle with individuals of differing positions."  Pltf. UMF 19.

E.        Witness Crystal Thomas

Crystal Thomas is an employee of Rezenberger, a contractor with BNSF that provides shuttle services for BNSF employees.  Pltf. UMF 21.  She is not related to Plaintiff.

**DISCUSSION**

A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's

4

1  claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.

2  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

3         The initial burden of showing the absence of material factual issues rests on the

4  proponent of a summary judgment. Once that burden is met, however, the opponent must counter

5  with specific factual allegations revealing a genuine dispute of fact in order to preclude summary

6  disposition. *See Int. Un. of Bricklayers & Allied Craftsmen Local Union No. 20 v. Martin Jaska,*

7  *Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

8  B.     Analysis

9         1.     First Cause of Action: Harassment in Violation of FEHA

10        Plaintiff claims harassment in violation of FEHA. California's FEHA explicitly prohibits

11  an employer from harassing an employee on the basis of race or religious creed. Cal. Gov't Code

12  §12940; s*ee also Dee v. Vintage Petroleum, Inc.,* 106 Cal.App.4th 30, 35, 129 Cal.Rptr.2d 923

13  (2003); *Erdmann v. Tranquility Inc.*, 155 F.Supp.2d 1152, 1159 (N.D. Cal. 2001). Harassment

14  includes epithets, derogatory comments or slurs. *Dee*, 106 Cal.App.4th at 35. Courts have been

15  guided in their interpretation of FEHA by federal decisions interpreting Title VII of the federal

16  civil rights act. *See Thompson v. City of Monrovia*, 186 Cal.App.4th 860, 876 (2010) (adopting

17  federal cases for FEHA harassment claims).

18        In order to prevail on a "harassment" or "hostile work environment" claim, Plaintiff must

19  establish that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult'

20  that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and

21  create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114

22  S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations omitted)*; Fisher v. San Pedro Peninsula*

23  *Hospital*, 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842 (1989) (same standard for FEHA

24  harassment claims); *Al-Raheem v. Covenant Care*, 2011 WL 4628698, *3, (E.D. Cal. Oct. 3,

25  2011) ("The terms 'hostile work environment' and 'harassment' are used interchangeably in that

26  the elements of a claim under either label are the same.").

27        Defendants argue that Plaintiff cannot establish harassment for two reasons: (1) Plaintiff

28  has failed to demonstrate that the alleged conduct occurred *because of* race or religion and (2)

1    Plaintiff has failed to demonstrate that Defendant Sheets' conduct was sufficiently severe and

2    pervasive to constitute harassment.[2]

3                    a.    Harassment *because of* race or religion

4            FEHA requires evidence showing the Plaintiff was subjected to unwelcome comments or

5    harassing conduct as a result of some protected characteristic.  *See, e.g. Thompson*, 186

6    Cal.App.4th at 878.  Defendants contend that (1) Plaintiff's claim for racial harassment is based

7    on Sheets' admission that he mistakenly thought Plaintiff was another African-American

8    employee whom he had observed talking to his co-workers about the Bible and (2) Plaintiff's

9    claim for religious harassment is based on Sheets' statements that "Christians don't lie."

10   Defendants believe these comments do not indicate animus towards Plaintiff because of race or

11   religion.  Defendants point to Plaintiff's deposition testimony indicating Sheets had problems

12   with "everybody" and that "it didn't matter what race or religion you were . . . he could be

13   singling out all . . . nationalities, all religions."  Thomas Dep. 44:23-45:4; 129:19-130:16; Defs.

14   UMF 26.

15           Plaintiff counters that Sheets' comments were clearly out of line and "the direct result of

16   Mr. Sheets['] inability to tell two African American workers apart, apparently because they all

17   look the same."  Doc. 20, p. 4.  This is an unsupported, conclusory statement and is insufficient

18   to establish a material factual dispute as to whether Defendant Sheets acted with animus because

19   of race.  Plaintiff believes that the evidence in this case is full of epithets, derogatory comments

20   and slurs sufficient to support a claim for harassment.   However, there is no evidence indicating

21   that Defendant Sheets used epithets, derogatory comments or slurs directed at Plaintiff to support

22   racial or religious animus.

23           Plaintiff's reliance on the testimony of Crystal Thomas and Darrell Kitchen does not

24   create a triable issue of fact regarding racial or religious animus.  Neither Ms. Thomas nor Mr.

25   ─────────────────

26   [2]Defendants also argue that the conduct complained of in this case constitutes personnel management by
     way of job testing that cannot be categorized as unlawful harassment.  *Janken v. GM Hughes Elecs.,* 46 Cal.App.4th

27   55, 63 (1996) (FEHA harassment is conduct which is "not necessary for performance of a supervisory job").  This
     argument is unpersuasive to the extent Plaintiff challenges the statements and actions of Defendant Sheets as

28   harassment and not the actual job testing or evaluation.

1   Kitchen provided any testimony regarding purported religious animus.  As to racial animus,

2   Plaintiff claims that Ms. Thomas provided evidence that four individuals, including Defendant

3   Sheets, created and employed the code word "pumpernickel" for African-Americans so that they

4   could be discussed over the radio without knowing.  Crystal Thomas Dep. 17:6-19:8.  A review

5   of Ms. Thomas' relevant deposition testimony, however, indicates that Defendant Sheets had no

6   role in creating the term "pumpernickel."  Exhibit 2 to Second Cregger Dec., Crystal Thomas

7   Dep. 32:3-11.  Although she claimed hearing Defendant Sheets use the term over the radio, her

8   assertion that he used the term to refer to Plaintiff is mere conjecture.  Crystal Thomas Dep.

9   51:20-54:24.  Furthermore, Ms. Thomas' anecdotal testimony regarding favorable treatment of

10  Caucasians, statements by BNSF employees referencing the Ku Klux Klan and statements by

11  BNSF employees dismissive of President Obama provide no additional support for Plaintiff's

12  claim that Defendant Sheets was motivated by racial animus.  Ms. Thomas' testimony is based

13  on hearsay and, more importantly, the alleged statements and actions did not involve Defendant

14  Sheets and were not made in the presence of or directed at Plaintiff.  Crystal Thomas Dep.

15  13:4-18; 16:6-19.  Ms. Thomas' additional observation regarding Defendant Sheets having a

16  short temper with minority employees also does not create a triable issue of fact.  Her testimony

17  concerned a single incident involving an employee named Harris.  Ms. Thomas did not

18  personally witness any interaction between Defendant Sheets and Harris.  Thus, her assertions

19  regarding Defendant Sheets' short temper with minority employees is based on conjecture and

20  supposition.  Exhibit 2 to Second Cregger Dec.; Crystal Thomas Dep. 33:7-36:7.

21        Plaintiff also contends that at least one management employee, Darrell Kitchen, an

22  African-American, did nothing to correct the problem after learning of the "pumpernickel" code

23  word's use.  Exhibit 1 to Declaration of Thomas Cregger in Support of Reply ("Second Cregger

24  Dec.");  Darrell Kitchen Dep. 40:23.  At best, Mr. Kitchen's testimony establishes only that he

25  was told by one person, a Mr. May, of the use of the term "pumpernickel" to refer to

26  African-Americans, and that at no other time did he hear the term used.  Exhibit 1 to Second

27  Cregger Dec.; Darrell Kitchen Dep. 40:2-20.  There is no evidence indicating Defendant Sheets

28  used such a term to refer to Plaintiff.

1    The Court finds no triable issues of fact concerning religious or racial animus on the part

2    of Defendant Sheets.

3                    b.       Severe or Pervasive Conduct

4        Even if the Court were to conclude that Defendant Sheets acted with religious or racial

5    animus, his alleged conduct was not sufficiently severe or pervasive as to alter Plaintiff's

6    working conditions. *Manatt v. Bank of America, NA*, 339 F.3d 792, 799 (9th Cir. 2003) (finding

7    that "the conduct of plaintiff's co-workers and supervisor-while offensive and inappropriate-did

8    not so pollute the workplace that it altered the conditions of her employment").  Offhand

9    comments, mere utterances and isolated incidents that cause offense (unless extremely serious)

10   will not amount to discriminatory changes in the terms and conditions of employment. *Id*. at 798

11   (internal citations and quotations omitted)*; see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

12   57, 67 (1986)*; Johnson v. Chevron Corp.*, 2009 WL 1404699, *13 (N.D. Cal. May 19, 2009)

13   (yelling at employee on approximately three occasions, blocking his path, changing his work

14   processes to make it harder to complete work and swearing at him on one or two occasions found

15   not sufficiently severe or pervasive).  Indeed, harassment "cannot be occasional, isolated,

16   sporadic or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated,

17   routine or a generalized nature." *Thompson*, 186 Cal.App.4 th at 877 (internal citations and

18   quotations omitted).

19       Here, Plaintiff's claim of racial harassment fails for multiple reasons.  First, there is no

20   evidence that *Plaintiff* was subjected to any unwelcome racial comments by Defendant Sheets.

21   As discussed above, Ms. Thomas' hearsay reports and conjecture regarding the pumpernickel

22   code word and examples of other BNSF employees making inappropriate comments do not

23   create triable issues of fact.

24       Second, Defendant Sheets' alleged statements on one occasion to the effect that

25   "Christians don't lie" and subsequent glaring looks are not sufficiently severe or pervasive to

26   establish religious harassment.  *See, e.g., Erdmann*, 155 F.Supp.2d at 1161 (three incidents;

27   supervisor told employee on two occasions that he should become a Mormon or he would go to

28   hell or he could forget about going to heaven); *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir.

1997) (religious comments over a two-year period).

Third, Plaintiff cannot demonstrate repeated, routine acts so severe or pervasive as to create an abusive environment.  At best, Plaintiff has identified the statements of July 5 and glaring looks to support his claim.  It is not reasonable to infer that statements to the effect of "Christians don't lie" and glaring had any racial or negative religious connotation.  Other so-called race based events that Plaintiff complains of were events that Plaintiff did not, in fact, witness.  *Thompson,* 186 Cal.App.4th at 878-89 (gossip is not a substitute for proof; evidence of harassment and plaintiff's awareness of that harassment are subject to the limitations of the hearsay rule).

Finally, Plaintiff argues that the isolated incident of July 5 qualifies as "severe" because he was scared when Defendant Sheets yelled at him.  "An isolated incident of harassing conduct may qualify as severe when it consists of a *physical* assault or the treat thereof."  *Hughes v. Pair,* 46 Cal.4th 1035, 1049 (2009) (internal quotations omitted) (emphasis in original).  Plaintiff being "scared" because of Defendant Sheets' alleged statements, without more, does not equate to a threatened physical assault.  There is no evidence establishing a threat of physical harm such that Plaintiff would reasonably fear an assault.  *Id.* at 1049.

Plaintiff cannot establish that Defendant Sheets' alleged conduct was sufficiently severe or pervasive as to alter Plaintiff's working conditions.

c.    Discrimination

Plaintiff contends that he has asserted a cause of action for discrimination in violation of FEHA.  There is no indication on the face of the Complaint that Plaintiff has asserted a cause of action for discrimination.  Although Plaintiff uses the term "discrimination" throughout the complaint, it is primarily in reference to Defendant Sheets' allegedly harassing conduct.  Assuming without deciding that Plaintiff has asserted a cause of action for discrimination, the Court nonetheless finds that he cannot prevail on such a claim as a matter of law.

Under the burden-shifting framework of FEHA (and Title VII), Plaintiff must establish a prima facie case of discrimination in the workplace by demonstrating that he: (1) was a member of a protected class; (2) performed his job in a competent manner; (3) suffered an adverse

1    employment action; and (4) the action occurred under circumstances suggesting discriminatory

2    motive (i.e. person outside of the protected class was treated more favorably). *McDonnell*

3    *Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Nidds v.*

4    *Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.1996), *cert. denied*, 522 U.S. 950, 118

5    S.Ct. 369, 139 L.Ed.2d 287 (1997); *Caldwell v. Paramount Uni. Sch. Distr.*, 41 Cal.App.4th 189,

6    200, 48 Cal.Rptr.2d 448 (1995); *Mixon v. Fair Employment and Housing Comm'n.*, 192

7    Cal.App.3d 1306, 1319, 237 Cal.Rptr. 884 (1987) (applying *McDonnell Douglas* factors).

8         Here, Plaintiff has not established a prima facie case of discrimination.  Specifically,

9    Plaintiff has proffered no evidence that he performed his job satisfactorily.  Indeed, there is no

10   such allegation in his Complaint.  Further, Plaintiff has proffered no evidence that he suffered an

11   adverse employment action because of race or religion or that his employer treated him

12   differently than a similarly situated employee who does not belong to the same protected class.

13   Plaintiff appears to argue that the difference between the discipline imposed on him and that

14   imposed on Defendant Sheets is relevant to his claims for harassment and discrimination.  This

15   argument misses the mark.  In this case, after an evidentiary hearing conducted by BNSF,

16   Plaintiff was disciplined for violations of BNSF operating rules regarding the safe operation of a

17   locomotive.  In contrast, Defendant Sheets was disciplined for his statements to Plaintiff, not rule

18   violations relating to the safe operation of a locomotive.  Thus, there is no real argument that

19   BNSF somehow treated a similarly situated employee differently or that Plaintiff suffered an

20   adverse employment action because of race or religion.

21        Based on the above, Defendants are entitled to summary judgment on Plaintiff's first

22   cause of action for harassment and/or discrimination.

23        3.        Second Cause of Action: Failure to Prevent Harassment against Defendant
                    BNSF

24

25        Both FEHA and Title VII require an employer who learns of harassment to take

         reasonable and immediate corrective action.  *McGinest v. GTE Service Corp.*, 360 F.3d 1103,

26

         1120 (9th Cir. 2004).  When a plaintiff seeks to recover damages based on a claim of failure to

27

28   prevent harassment, he must show three essential elements: (1) plaintiff was subjected to

1  discrimination, harassment or retaliation; (2) defendant failed to take all reasonable steps to

2  prevent discrimination, harassment or retaliation; and (3) this failure caused plaintiff to suffer

3  injury, damage, loss or harm. *Leland v. City and County of San Francisco*, 576 F.Supp.2d 1079,

4  1103 (N.D. Cal.2008). As the Court has determined there was no underlying harassment,

5  Plaintiff cannot maintain an actionable claim for failure to prevent harassment. *Trujillo v. North*

6  *County Transit Dist.*, 63 Cal.App.4th 280, 289 (1998). Defendant BNSF is entitled to summary

7  judgment on Plaintiff's second cause of action.

8      4.      Third Cause of Action: Intentional Infliction of Emotional Distress against
            Defendants BNSF and Sheets

9

10         To state a claim for intentional infliction of emotional distress under California law, a

11  plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of

12  causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

13  suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

14  emotional distress by the defendant's outrageous conduct." *Hughes*, 46 Cal.4th at 1050 (citations

15  and quotation marks omitted). A defendant's conduct is "outrageous" when it is so "extreme as

16  to exceed all bounds of that usually tolerated in a civilized community," and "the defendant's

17  conduct must be intended to inflict injury or engaged in with the realization that injury will

18  result." *Id.* at 1050-51 (citations and quotation marks omitted). "Liability for intentional

19  infliction of emotion distress does not extend to mere insults, indignities, threats, annoyances,

20  petty oppressions, or other trivialities." *Hughes*, 46 Cal.4th at 1051 (internal citations and

    quotations omitted).

21         Given the Court's finding that the alleged conduct does not support a harassment claim,

22  Plaintiff's claim for intentional infliction of emotional distress likewise fails. *Haberman v.*

23  *Cengage Learning, Inc*, 180 Cal.App.4th 365, 389 (2009). Moreover, the July 5 incident alleged

24  here does not amount to extreme and outrageous conduct. *Schneider v. TRW, Inc.*, 938 F.2d 986

25  (9th Cir. 1991) (two incidents where supervisor yelled and screamed at plaintiff while evaluating

26  her work performance do not support a claim for intentional infliction of emotional distress); *Cf.*

27  *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 497 (1970) (supervisor's conduct in yelling

28

1  racial slurs at plaintiff in front of co-workers constituted intentional infliction of emotional

2  distress).  Thus, Defendants are entitled to summary judgment on Plaintiff's third cause of action

3  for intentional infliction of emotional distress.

4         5.      Fourth Cause of Action: Breach of the Implied Covenant of Good Faith and
                  Fair Dealing against Defendant BNSF

5
6         Defendant BNSF argues that a claim for breach of the implied covenant of good faith and

7  fair dealing is contractual in nature and is subject to preemption under the Railway Labor Act, 45

8  U.S.C. § 151 *et seq.*  Plaintiff does not oppose dismissal of the good faith and fair dealing cause

9  of action based on preemption.  Therefore, Defendant BNSF is entitled to summary judgment on

10 the fourth cause of action for breach of the implied covenant of good faith and fair dealing.

## CONCLUSION AND ORDER

11        For the reasons discussed above, this Court:

12        1.      GRANTS Defendants' motion for summary judgment; and

13        2.      DIRECTS the clerk to enter judgment in favor of Defendants BNSF and

14                Sheets and against Plaintiff Thomas and to close this action.

15        IT IS SO ORDERED.

16     Dated:    **July 15, 2012**              _____/s/ **Dennis L. Beck**_____
17                                               UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28