# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE A. THOMAS, III, | 1:11cv0214 DLB |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Document 19) |
| v. | |
| BNSF RAILWAY COMPANY, a Delaware Corporation; BEN SHEETS, an individual; and DOES 1-20 inclusive, | |
| Defendants. | |

On May 15, 2012, Defendants BNSF Railway Company and Ben Sheets filed the instant motion for summary judgment. The matter was heard on June 15, 2012, before the Honorable Dennis L. Beck, United States Magistrate Judge. Thomas Cregger appeared on behalf of Defendants BNSF Railway Company and Ben Sheets. John Furstenthal appeared on behalf of Plaintiff Willie A. Thomas, III.

**BACKGROUND**

Plaintiff Willie A. Thomas, III ("Plaintiff") filed this employment discrimination action against Defendants BNSF Railway Company ("BNSF") and Ben Sheets ("Sheets") (collectively "Defendants") on December 15, 2010, in Fresno County Superior Court. Plaintiff asserted four causes of action: (1) harassment based on race and religion in violation of Cal. Gov't Code § 12940 against BNSF and Sheets: (2) failure to prevent harassment in violation of Cal. Gov't Code § 12940(k) against BNSF; (3) intentional infliction of emotional distress against BNSF and

1

Sheets; and (4) breach of the implied covenant of good faith and fair dealing against BNSF.

Defendants answered the complaint on February 4, 2011, and removed the action to this Court on February 7, 2011. Thereafter, on May 14, 2012, Defendants filed the instant motion for summary judgment. Plaintiff opposed the motion on June 1, 2012, and Defendants replied on June 8, 2012.

## UNDISPUTED MATERIAL FACTS

A.          Plaintiff's employment with BNSF

Plaintiff is an African-American who has worked for BNSF since 1992. Defendants' Separate Statement of Undisputed Facts ("Defs. UMF") 1. He initially was hired as a maintenance of way worker. Defs. UMF 2. In 1994, he was promoted to the position of Switchman/Conductor. Defs. UMF 3. In 1998, he was promoted to Locomotive Engineer and has remained in that position to date. Defs. UMF 4. Throughout his employment, Plaintiff was subject to ongoing testing while in the workplace. Defs. UMF 5.

B.          Defendant Sheets' employment with BNSF

Defendant Sheets, at the time of the incident in question, July 5, 2009, was employed as a Senior Trainmaster. Defs. UMF 6. One of Sheets' tasks was to observe employees, such as Plaintiff, to insure they were complying with BNSF work rules. Defs. UMF 7. On July 5, 2009, Sheets was testing Thomas and other members of his crew regarding compliance with BNSF work rules. Defs. UMF 8.

C.          Encounter between Plaintiff and Defendant Sheets

On July 5, 2009, Plaintiff and his crew were assigned to perform switching movement at Kings Park, near Hanford, California. Defs. UMF 9. While on route to Kings Park, Plaintiff received a radio instruction to "halt all movements." Defs. UMF 10. After the train stopped, Sheets boarded the locomotive. Defs. UMF 11. Sheets informed Plaintiff that he had been testing the crew through observing their operating of the train. Defs. UMF 12. Sheets also informed Plaintiff that he had observed the locomotive move over a crossing without its "ditch lights." Defs. UMF 13. Sheets told Plaintiff that he needed to examine the locomotive data recorder to determine the train's speed at the crossing. Defs. UMF 14.

While in the locomotive, Sheets noticed that Plaintiff had a cell phone in the locomotive cab. Defs. UMF 16. Plaintiff claims that the phone was powered off, but that he had been using the calculator functions earlier. Defs. UMF 17. While in the cab, Sheets observed the phone vibrating.[1] Defs. UMF 18. Sheets ordered Plaintiff to show him the phone. Defs. UMF 19. An argument ensued between Sheets and Plaintiff, with Plaintiff claiming the phone was off, and Sheets claiming he had heard it vibrate. Defs. UMF 20. As the argument escalated, Plaintiff claims that Sheets called him a "liar," and then made statements to the effect of "you are not a true Christian, Christians don't lie," and "I've seen you witnessing . . . to fellow railroaders about the Bible. So if you were a Christian, you shouldn't lie." Defs. UMF 21. These are the only statements Sheets made regarding religion. Defs. UMF 22. Plaintiff was scared when Sheets yelled at him. Pltf. UMF 4. Plaintiff was suspended for 20 days without pay because of the alleged cell phone use and for allegedly not having the ditch lights on. Plaintiff's Statement of Facts ("Pltf. UMF") 2.

Prior to July 5, 2009, Plaintiff had not met Sheets, nor experienced any discrimination or harassment on account of his race or religion. Defs. UMF 25. Plaintiff admits that Sheets tested all employees regardless of race or nationality. Defs. UMF 26.

D.    Plaintiff's complaint to Human Resources

On July 14, 2009, Plaintiff submitted a formal complaint to the BNSF HR Department. Defs. UMF 27. In the complaint, he described the incident of July 5, 2009. He claimed to have

---

[1] In his affidavit, Plaintiff declares that his cell phone did not vibrate or make any noise and his cell phone records corroborate this fact. Affidavit of Plaintiff ¶ 7 and Exhibit A. Defendants object because there is an insufficient foundation for the cell phone records. Defendants' objection is OVERRULED. However, the cell phone records are irrelevant and are not determinative as they identify only incoming and outgoing calls, not texts or any other of the myriad items that might cause a cell phone to vibrate.

To the extent Plaintiff is attempting to dispute issues related to the underlying discipline, he may not do so. First, Plaintiff does not allege in his complaint that Defendant Sheets or anyone else made false allegations or that the discipline imposed resulted from any misconduct on the part of Sheets or others. Second, and more importantly, Plaintiff is barred from disputing the facts of the underlying discipline because, after a formal investigation, BNSF determined that the charged violations regarding the cell phone and the ditch lights occurred and imposed discipline. Plaintiff was allowed to appeal the discipline, but he did not. Declaration of Joe Heenan ¶¶ 3-7. As Plaintiff cannot "relitigate" the disciplinary issue, the Court treats the facts relating to the rules violations as undisputed.

3

been subjected to religious harassment by Sheets and, because Sheets had mistaken him for another African-American employee, he claimed the statements were racially motivated. Defs. UMF 28. BNSF Human Resources began an investigation as the result of Plaintiff's complaint. Defs. UMF 29. At the initiation of the investigation, BNSF issued a warning regarding its policy which prohibits any retaliatory act against a complaining employee. Defs. UMF 30. As a result of the investigation, Sheets was formally reprimanded and was required to undergo anger management training. Defs. UMF 31. The reprimand letter included language that any further incident or failure to comply could result in discipline, to include termination. Defs. UMF 32. Sheets was not suspended, docked pay or demoted. Pltf. UMF 3.

Plaintiff claims that Sheets continued to harass him. Defs. UMF 33. The "harassment" consisted of "glaring looks of anger and discontent." Defs. UMF 34. Plaintiff believes the harassment "intensified" because Sheets never apologized to him personally. Sheets did, however, send a written apology. Defs. UMF 35.

BNSF put Sheets on a "Performance Improvement Plan" ("PIP") for complaints about his "management style" before the incident with Plaintiff. Pltf. UMF 17. In a review, Sheets indicated that "one of the areas that I have struggled with is keeping my personal feeling in check." Pltf. UMF 18. Sheets also indicated in a review that "I have attended voluntary counseling to work on the personality conflict and have identified the areas of my personality that cause me to struggle with individuals of differing positions." Pltf. UMF 19.

E.   Witness Crystal Thomas

Crystal Thomas is an employee of Rezenberger, a contractor with BNSF that provides shuttle services for BNSF employees. Pltf. UMF 21. She is not related to Plaintiff.

## DISCUSSION

A.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's

4

claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The initial burden of showing the absence of material factual issues rests on the proponent of a summary judgment. Once that burden is met, however, the opponent must counter with specific factual allegations revealing a genuine dispute of fact in order to preclude summary disposition. *See Int. Un. of Bricklayers & Allied Craftsmen Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

B.  Analysis

   1.   First Cause of Action: Harassment in Violation of FEHA

Plaintiff claims harassment in violation of FEHA. California's FEHA explicitly prohibits an employer from harassing an employee on the basis of race or religious creed. Cal. Gov't Code §12940; s*ee also Dee v. Vintage Petroleum, Inc.,* 106 Cal.App.4th 30, 35, 129 Cal.Rptr.2d 923 (2003); *Erdmann v. Tranquility Inc.*, 155 F.Supp.2d 1152, 1159 (N.D. Cal. 2001). Harassment includes epithets, derogatory comments or slurs. *Dee,* 106 Cal.App.4th at 35. Courts have been guided in their interpretation of FEHA by federal decisions interpreting Title VII of the federal civil rights act. *See Thompson v. City of Monrovia,* 186 Cal.App.4th 860, 876 (2010) (adopting federal cases for FEHA harassment claims).

In order to prevail on a "harassment" or "hostile work environment" claim, Plaintiff must establish that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations omitted)*; Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842 (1989) (same standard for FEHA harassment claims); *Al-Raheem v. Covenant Care*, 2011 WL 4628698, *3, (E.D. Cal. Oct. 3, 2011) ("The terms 'hostile work environment' and 'harassment' are used interchangeably in that the elements of a claim under either label are the same.").

Defendants argue that Plaintiff cannot establish harassment for two reasons: (1) Plaintiff has failed to demonstrate that the alleged conduct occurred *because of* race or religion and (2)

Plaintiff has failed to demonstrate that Defendant Sheets' conduct was sufficiently severe and pervasive to constitute harassment.[2]

      a.      Harassment *because of* race or religion

FEHA requires evidence showing the Plaintiff was subjected to unwelcome comments or harassing conduct as a result of some protected characteristic. *See, e.g. Thompson*, 186 Cal.App.4th at 878. Defendants contend that (1) Plaintiff's claim for racial harassment is based on Sheets' admission that he mistakenly thought Plaintiff was another African-American employee whom he had observed talking to his co-workers about the Bible and (2) Plaintiff's claim for religious harassment is based on Sheets' statements that "Christians don't lie." Defendants believe these comments do not indicate animus towards Plaintiff because of race or religion. Defendants point to Plaintiff's deposition testimony indicating Sheets had problems with "everybody" and that "it didn't matter what race or religion you were . . . he could be singling out all . . . nationalities, all religions." Thomas Dep. 44:23-45:4; 129:19-130:16; Defs. UMF 26.

Plaintiff counters that Sheets' comments were clearly out of line and "the direct result of Mr. Sheets['] inability to tell two African American workers apart, apparently because they all look the same." Doc. 20, p. 4. This is an unsupported, conclusory statement and is insufficient to establish a material factual dispute as to whether Defendant Sheets acted with animus because of race. Plaintiff believes that the evidence in this case is full of epithets, derogatory comments and slurs sufficient to support a claim for harassment. However, there is no evidence indicating that Defendant Sheets used epithets, derogatory comments or slurs directed at Plaintiff to support racial or religious animus.

Plaintiff's reliance on the testimony of Crystal Thomas and Darrell Kitchen does not create a triable issue of fact regarding racial or religious animus. Neither Ms. Thomas nor Mr.

---

[2]Defendants also argue that the conduct complained of in this case constitutes personnel management by way of job testing that cannot be categorized as unlawful harassment. *Janken v. GM Hughes Elecs.,* 46 Cal.App.4th 55, 63 (1996) (FEHA harassment is conduct which is "not necessary for performance of a supervisory job"). This argument is unpersuasive to the extent Plaintiff challenges the statements and actions of Defendant Sheets as harassment and not the actual job testing or evaluation.

Kitchen provided any testimony regarding purported religious animus. As to racial animus, Plaintiff claims that Ms. Thomas provided evidence that four individuals, including Defendant Sheets, created and employed the code word "pumpernickel" for African-Americans so that they could be discussed over the radio without knowing. Crystal Thomas Dep. 17:6-19:8. A review of Ms. Thomas' relevant deposition testimony, however, indicates that Defendant Sheets had no role in creating the term "pumpernickel." Exhibit 2 to Second Cregger Dec., Crystal Thomas Dep. 32:3-11. Although she claimed hearing Defendant Sheets use the term over the radio, her assertion that he used the term to refer to Plaintiff is mere conjecture. Crystal Thomas Dep. 51:20-54:24. Furthermore, Ms. Thomas' anecdotal testimony regarding favorable treatment of Caucasians, statements by BNSF employees referencing the Ku Klux Klan and statements by BNSF employees dismissive of President Obama provide no additional support for Plaintiff's claim that Defendant Sheets was motivated by racial animus. Ms. Thomas' testimony is based on hearsay and, more importantly, the alleged statements and actions did not involve Defendant Sheets and were not made in the presence of or directed at Plaintiff. Crystal Thomas Dep. 13:4-18; 16:6-19. Ms. Thomas' additional observation regarding Defendant Sheets having a short temper with minority employees also does not create a triable issue of fact. Her testimony concerned a single incident involving an employee named Harris. Ms. Thomas did not personally witness any interaction between Defendant Sheets and Harris. Thus, her assertions regarding Defendant Sheets' short temper with minority employees is based on conjecture and supposition. Exhibit 2 to Second Cregger Dec.; Crystal Thomas Dep. 33:7-36:7.

Plaintiff also contends that at least one management employee, Darrell Kitchen, an African-American, did nothing to correct the problem after learning of the "pumpernickel" code word's use. Exhibit 1 to Declaration of Thomas Cregger in Support of Reply ("Second Cregger Dec."); Darrell Kitchen Dep. 40:23. At best, Mr. Kitchen's testimony establishes only that he was told by one person, a Mr. May, of the use of the term "pumpernickel" to refer to African-Americans, and that at no other time did he hear the term used. Exhibit 1 to Second Cregger Dec.; Darrell Kitchen Dep. 40:2-20. There is no evidence indicating Defendant Sheets used such a term to refer to Plaintiff.

The Court finds no triable issues of fact concerning religious or racial animus on the part of Defendant Sheets.

### b. Severe or Pervasive Conduct

Even if the Court were to conclude that Defendant Sheets acted with religious or racial animus, his alleged conduct was not sufficiently severe or pervasive as to alter Plaintiff's working conditions. *Manatt v. Bank of America, NA*, 339 F.3d 792, 799 (9th Cir. 2003) (finding that "the conduct of plaintiff's co-workers and supervisor-while offensive and inappropriate-did not so pollute the workplace that it altered the conditions of her employment"). Offhand comments, mere utterances and isolated incidents that cause offense (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id*. at 798 (internal citations and quotations omitted)*; see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Johnson v. Chevron Corp.,* 2009 WL 1404699, *13 (N.D. Cal. May 19, 2009) (yelling at employee on approximately three occasions, blocking his path, changing his work processes to make it harder to complete work and swearing at him on one or two occasions found not sufficiently severe or pervasive). Indeed, harassment "cannot be occasional, isolated, sporadic or trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Thompson*, 186 Cal.App.4 th at 877 (internal citations and quotations omitted).

Here, Plaintiff's claim of racial harassment fails for multiple reasons. First, there is no evidence that *Plaintiff* was subjected to any unwelcome racial comments by Defendant Sheets. As discussed above, Ms. Thomas' hearsay reports and conjecture regarding the pumpernickel code word and examples of other BNSF employees making inappropriate comments do not create triable issues of fact.

Second, Defendant Sheets' alleged statements on one occasion to the effect that "Christians don't lie" and subsequent glaring looks are not sufficiently severe or pervasive to establish religious harassment. *See, e.g., Erdmann*, 155 F.Supp.2d at 1161 (three incidents; supervisor told employee on two occasions that he should become a Mormon or he would go to hell or he could forget about going to heaven); *Venters v. City of Delphi*, 123 F.3d 956 (7th Cir.

1997) (religious comments over a two-year period).

Third, Plaintiff cannot demonstrate repeated, routine acts so severe or pervasive as to create an abusive environment. At best, Plaintiff has identified the statements of July 5 and glaring looks to support his claim. It is not reasonable to infer that statements to the effect of "Christians don't lie" and glaring had any racial or negative religious connotation. Other so-called race based events that Plaintiff complains of were events that Plaintiff did not, in fact, witness. *Thompson,* 186 Cal.App.4th at 878-89 (gossip is not a substitute for proof; evidence of harassment and plaintiff's awareness of that harassment are subject to the limitations of the hearsay rule).

Finally, Plaintiff argues that the isolated incident of July 5 qualifies as "severe" because he was scared when Defendant Sheets yelled at him. "An isolated incident of harassing conduct may qualify as severe when it consists of a *physical* assault or the treat thereof." *Hughes v. Pair,* 46 Cal.4th 1035, 1049 (2009) (internal quotations omitted) (emphasis in original). Plaintiff being "scared" because of Defendant Sheets' alleged statements, without more, does not equate to a threatened physical assault. There is no evidence establishing a threat of physical harm such that Plaintiff would reasonably fear an assault. *Id.* at 1049.

Plaintiff cannot establish that Defendant Sheets' alleged conduct was sufficiently severe or pervasive as to alter Plaintiff's working conditions.

    c.    Discrimination

Plaintiff contends that he has asserted a cause of action for discrimination in violation of FEHA. There is no indication on the face of the Complaint that Plaintiff has asserted a cause of action for discrimination. Although Plaintiff uses the term "discrimination" throughout the complaint, it is primarily in reference to Defendant Sheets' allegedly harassing conduct. Assuming without deciding that Plaintiff has asserted a cause of action for discrimination, the Court nonetheless finds that he cannot prevail on such a claim as a matter of law.

Under the burden-shifting framework of FEHA (and Title VII), Plaintiff must establish a prima facie case of discrimination in the workplace by demonstrating that he: (1) was a member of a protected class; (2) performed his job in a competent manner; (3) suffered an adverse

employment action; and (4) the action occurred under circumstances suggesting discriminatory motive (i.e. person outside of the protected class was treated more favorably). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir.1996), *cert. denied*, 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); *Caldwell v. Paramount Uni. Sch. Distr.*, 41 Cal.App.4th 189, 200, 48 Cal.Rptr.2d 448 (1995); *Mixon v. Fair Employment and Housing Comm'n.*, 192 Cal.App.3d 1306, 1319, 237 Cal.Rptr. 884 (1987) (applying *McDonnell Douglas* factors).

Here, Plaintiff has not established a prima facie case of discrimination. Specifically, Plaintiff has proffered no evidence that he performed his job satisfactorily. Indeed, there is no such allegation in his Complaint. Further, Plaintiff has proffered no evidence that he suffered an adverse employment action because of race or religion or that his employer treated him differently than a similarly situated employee who does not belong to the same protected class. Plaintiff appears to argue that the difference between the discipline imposed on him and that imposed on Defendant Sheets is relevant to his claims for harassment and discrimination. This argument misses the mark. In this case, after an evidentiary hearing conducted by BNSF, Plaintiff was disciplined for violations of BNSF operating rules regarding the safe operation of a locomotive. In contrast, Defendant Sheets was disciplined for his statements to Plaintiff, not rule violations relating to the safe operation of a locomotive. Thus, there is no real argument that BNSF somehow treated a similarly situated employee differently or that Plaintiff suffered an adverse employment action because of race or religion.

Based on the above, Defendants are entitled to summary judgment on Plaintiff's first cause of action for harassment and/or discrimination.

3. Second Cause of Action: Failure to Prevent Harassment against Defendant BNSF

Both FEHA and Title VII require an employer who learns of harassment to take reasonable and immediate corrective action. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1120 (9th Cir. 2004). When a plaintiff seeks to recover damages based on a claim of failure to prevent harassment, he must show three essential elements: (1) plaintiff was subjected to

discrimination, harassment or retaliation; (2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm. *Lelaind v. City and County of San Francisco*, 576 F.Supp.2d 1079, 1103 (N.D. Cal.2008). As the Court has determined there was no underlying harassment, Plaintiff cannot maintain an actionable claim for failure to prevent harassment. *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 289 (1998). Defendant BNSF is entitled to summary judgment on Plaintiff's second cause of action.

        4.        Third Cause of Action: Intentional Infliction of Emotional Distress against Defendants BNSF and Sheets

To state a claim for intentional infliction of emotional distress under California law, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes*, 46 Cal.4th at 1050 (citations and quotation marks omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id*. at 1050-51 (citations and quotation marks omitted). "Liability for intentional infliction of emotion distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes*, 46 Cal.4th at 1051 (internal citations and quotations omitted).

Given the Court's finding that the alleged conduct does not support a harassment claim, Plaintiff's claim for intentional infliction of emotional distress likewise fails. *Haberman v. Cengage Learning, Inc*, 180 Cal.App.4th 365, 389 (2009). Moreover, the July 5 incident alleged here does not amount to extreme and outrageous conduct. *Schneider v. TRW, Inc.*, 938 F.2d 986 (9th Cir. 1991) (two incidents where supervisor yelled and screamed at plaintiff while evaluating her work performance do not support a claim for intentional infliction of emotional distress); *Cf. Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 497 (1970) (supervisor's conduct in yelling

racial slurs at plaintiff in front of co-workers constituted intentional infliction of emotional distress).  Thus, Defendants are entitled to summary judgment on Plaintiff's third cause of action for intentional infliction of emotional distress.

     5.    <u>Fourth Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant BNSF</u>

Defendant BNSF argues that a claim for breach of the implied covenant of good faith and fair dealing is contractual in nature and is subject to preemption under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*  Plaintiff does not oppose dismissal of the good faith and fair dealing cause of action based on preemption.  Therefore, Defendant BNSF is entitled to summary judgment on the fourth cause of action for breach of the implied covenant of good faith and fair dealing.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.    GRANTS Defendants' motion for summary judgment; and

2.    DIRECTS the clerk to enter judgment in favor of Defendants BNSF and Sheets and against Plaintiff Thomas and to close this action.

IT IS SO ORDERED.

    **Dated:**   **July 15, 2012**           /s/ **Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE